UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
MIDDLE DIVISION

**ASTRID SANDS,**
        Plaintiff,

v.

**MARTIN J. O'MALLEY,**
**Commissioner of the Social**
**Security Administration,**
        Defendant.

Case No. 4:23-cv-163-CLM

## MEMORANDUM OPINION

Astrid Sands seeks Supplemental Security Income ("SSI") from the Social Security Administration ("SSA") based on several impairments. The SSA denied Sands' application in an opinion written by an Administrative Law Judge ("ALJ").

Sands argues that the ALJ erred by: (1) not treating statements from Dr. Taneal as a medical opinion; (2) inadequately evaluating medical opinions from Dr. Nichols and Dr. Bentley; and (3) not adequately developing the record. For the reasons stated within, the court will **REVERSE** the SSA's denial of benefits and **REMAND** this case to the Commissioner.

### I.   STATEMENT OF THE CASE

This is Sands' third claim for benefits. Before describing Sands' previous SSA proceedings, the court will detail Sands' impairments, as she told them to the ALJ.

#### A.   Sands' Disability, as told to the ALJ

Sands was 49 on the date of the ALJ's decision. (R. 39, 260). She has a general education diploma and past work as a truck driver. (R. 54, 80, 337). According to Sands, she suffers from back and neck problems, obesity, asthma, aneurysm, nerve damage on left side of body, high blood pressure, bipolar

disorder, panic depression, schizophrenia, sleep disorder, seizures, acid reflux, high cholesterol, memory problems, migraines, severe headaches, and rheumatoid arthritis. (R. 336). At the ALJ hearing, Sands testified that she suffered from chest pain daily. (R. 68). Sands also said that she quit work as a truck driver because she got injured on the job, which led to two aneurysms and a stroke. (*Id.*).

Sands says that her worst problems stem from neuropathy on her left side and her rheumatoid arthritis. (R. 69). Sands' back pain makes it feel like someone is yanking on her spine and causes her legs to go numb. (*Id.*). Sands also has issues with gripping and feeling with her hands, which often prevents her from being able to hold even a coffee cup. (*Id.*). Plus, Sands suffers from seizures, including grand mal seizures. (R. 70–71).

Sands gets migraines around four times a month, and they usually last three to seven days. (R. 71). Because of her seizures, Sands doesn't drive. (*Id.*). And Sands uses a cane to help her get around. (R. 76).

On a typical day, Sands wakes up to see her husband off to work. (R. 73). She then lays in bed, so nothing bad happens to her, and watches TV shows, such as *Criminal Minds*. (*Id.*). When Sands' husband comes home, he gives her something to eat or drink and helps her shower. (R. 74). She then tries to sit with him in the living room for a while. (*Id.*).

Sands only leaves the house to go to doctor's appointments. (R. 76). And Sands' hobbies include cross stitching, watching television, and Facebook. (R. 76–78). Sands also has a couple of friends who she met through online games. (R. 77–78).

### B. Sands' Prior SSA Proceedings

Sands applied for disability and disability insurance benefits in 2009 and was awarded them in 2010. In 2014, the SSA determined that Sands was no longer disabled and terminated her benefits. Sands then filed a second application for benefits, which an ALJ denied in May 2020.

In rejecting Sands' claim for benefits, the ALJ found that Sands had the residual functional capacity to perform light work with several additional limitations, so Sands could perform work as a laundry room attendant,

electronics worker, or hand packager. To reach this decision, the ALJ considered opinion evidence from treating physician Mary Rutherford; consultative examiners June Nichols, Celtin Robertson, Mary Arnold, and Samuel Fleming; and State agency physicians Victoria Hogan and Robert Estock.

### C. Determining Disability

The SSA has created the following five-step process to determine whether an individual is disabled and thus entitled to benefits under the Social Security Act:

| | The 5-Step Test | |
|---|---|---|
| Step 1 | Is the Claimant engaged in substantial gainful activity? | If yes, claim denied. If no, proceed to Step 2. |
| Step 2 | Does the Claimant suffer from a severe, medically-determinable impairment or combination of impairments? | If no, claim denied. If yes, proceed to Step 3. |
| Step 3 | Does the Step 2 impairment meet the criteria of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appx. 1? | If yes, claim granted. If no, proceed to Step 4. |
| | *Determine Residual Functional Capacity* | |
| Step 4 | Does the Claimant possess the residual functional capacity to perform the requirements of his past relevant work? | If yes, claim denied. If no, proceed to Step 5. |
| Step 5 | Is the Claimant able to do any other work considering his residual functional capacity, age, education, and work experience? | If yes, claim denied. If no, claim granted. |

*See* 20 C.F.R. §§ 416.920(a), 416.920(b) (Step 1); 20 C.F.R. § 416.920(c) (Step 2); 20 C.F.R. §§ 416.920(d), 404.925, 404.926 (Step 3); 20 C.F.R. § 404.920(e-f) (Step 4); 20 C.F.R. § 404.920(g) (Step 5).

As shown by the gray-shaded box, there is an intermediate step between Steps 3 and 4 that requires the ALJ to determine a claimant's "residual functional capacity," which is the claimant's ability to perform physical and mental work activities on a sustained basis.

### D. Sands' Application and the ALJ's Decision

The SSA reviews applications for benefits in three stages: (1) initial determination, including reconsideration; (2) review by an ALJ; and (3) review by the SSA Appeals Council. *See* 20 C.F.R. § 404.900(a)(1-4).

Sands filed her current application for SSI in November 2020, claiming to suffer from several impairments, including neck and back pain, migraines, seizures, panic depression, and rheumatoid arthritis. After receiving an initial denial in January 2022, Sands requested a hearing, which the ALJ conducted in August 2022. The ALJ ultimately issued an opinion denying Sands' claims a few weeks later on August 15, 2022.

At Step 1, the ALJ determined that Sands was not engaged in substantial gainful activity and thus her claims would progress to Step 2.

At Step 2, the ALJ determined Sands suffered from the following severe impairments: post-traumatic stress disorder (PTSD), depression, neurocognitive disorder, seizure disorder, migraine headaches, degenerative disc disease (DDD), anxiety, decreased visual acuity, and obesity.

At Step 3, the ALJ found that none of Sands' impairments, individually or combined, met or equaled the severity of any of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. So the ALJ next had to determine Sands' residual functional capacity.

The ALJ determined that Sands had the residual functional capacity to perform light work with these added limitations:

- Sands can occasionally climb ramps and stairs.

- Sands can occasionally balance, stoop, kneel, and crouch.

- Sands cannot crawl.

- Sands can frequently reach overhead and finger bilaterally.

- Sands must avoid tasks requiring fine discrimination, such as sewing, tying threads, close machine work, or reading small print (10-point font or smaller).

- Sands must avoid commercial driving, open bodies of water, unprotected heights, and hazardous machinery.

- Sands can have occasional exposure to pulmonary irritants such as fumes, odors, dusts, and gases.

- Sands can understand, remember, and carry out simple instructions; however, the work should not have assembly line production requirements.

- Sands can sustain work with occasional interactions with others and occasional changes in the work setting.

- Sands can attend and concentrate for two-hour periods.

At Step 4, the ALJ found that Sands could not perform her past relevant work. At Step 5, the ALJ determined that Sands could perform jobs, such as assembler, final inspector, and press operator that exist in significant numbers in the national economy and thus Sands was not disabled under the Social Security Act.

Sands requested an Appeals Council review of the ALJ's decision. The Appeals Council will review an ALJ's decision for only a few reasons, and the Appeals Council found no such reason under the rules to review the ALJ's decision. As a result, the ALJ's decision became the final decision of the SSA Commissioner, and it is the decision subject to this court's review.

## II. STANDARD OF REVIEW

This court's role in reviewing claims brought under the Social Security Act is narrow. The scope of the court's review is limited to (a) whether the record contains substantial evidence to sustain the ALJ's decision, *see* 42 U.S.C. § 405(g); *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982), and (b) whether the ALJ applied the correct legal standards, *see Stone v. Comm'r of Soc. Sec.*, 544 F. App'x 839, 841 (11th Cir. 2013) (citing *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004)). "Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Crawford*, 363 F.3d at 1158.

## III. LEGAL ANALYSIS

Sands makes three arguments for why the ALJ erred. First, Sands argues that the ALJ erred in not treating certain statements by Dr. Taneal as medical opinions. Second, Sands asserts that the ALJ erred in evaluating opinions from Dr. Nichols and Dr. Bentley. Finally, Sands contends that the ALJ didn't adequately develop the record. The court agrees with Sands that (a) the ALJ didn't adequately discuss the supportability factor when evaluating Dr. Nichols and Dr. Bentley's opinions, and (b) this case should be remanded for the ALJ to address opinion evidence, if any, from Dr. Arnold and Dr. Duncan. So the court needn't address Sands' other arguments for reversal.

### A. ALJ's Evaluation of Opinion Evidence

Under the regulations that apply to Sands' SSI application, an ALJ must articulate how persuasive he finds all the medical opinions and prior administrative findings in the claimant's record. *See* 20 C.F.R. § 416.920c(b). ALJ's focus on the persuasiveness of an opinion by looking at the opinion's supportability and consistency and must explain how they considered these two factors. *See* 20 C.F.R. § 416.920c(b)(2). The ALJ may, but need not, consider other factors such as the medical source's relationship with the claimant and specialization. *See id.* Under the supportability factor "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his . . . medical opinion(s) . . . , the more persuasive the . . . medical opinion(s) . . . will be." 20 C.F.R. § 416.920c(c)(1). And under the consistency factor, "[t]he more consistent a medical opinion(s)

6

. . . is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) . . . will be." 20 C.F.R. § 416.920c(c)(2).

1. <u>Background</u>: Dr. June Nichols is a consultative psychological examiner who examined Sands when her second application for benefits was under review. (R. 421–424). After detailing Sands' history of present illness and mental status examination findings, Dr. Nichols stated that Sands' "[p]rognosis for significant improvement over the next 12 months is poor" because she continued to suffer from seizures and experience rapid mood swings. (R. 424). Dr. Nichols also said that while Sands appeared to understand instructions, she would have trouble remembering complex instructions and carrying them out. (*Id.*). And, according to Dr. Nichols, Sands cannot sustain concentration and persist in a work-related activity at a reasonable pace. (*Id.*). Plus, Dr. Nichols found Sands couldn't maintain effective social interaction on a consistent and independent basis with supervisors, coworkers, and the public. (*Id.*). Finally, while Dr. Nichols determined Sands could manage her own funds, she found that Sands couldn't deal with normal pressures in a competitive work setting. (*Id.*).

The ALJ found this opinion partially persuasive because "it is not entirely consistent with or supported by the evidence." (R. 50). The ALJ noted that limiting Sands to simple tasks was consistent with the record, but Dr. Nichols' opinion that Sands cannot "concentrate, deal with normal pressure, or interact is not supported by evidence or the record." (*Id.*). The ALJ then stated that Sands' mental status examinations "revealed normal cognition, adequate attention, and intact memory." (*Id.*). According to the ALJ, though Sands reported not liking being around other people, there was no evidence that she couldn't get along with them. (*Id.*). Finally, the ALJ stated that Sands was consistently oriented with appropriate mood and affect. (*Id.*).

In December 2021, Sands had another consultative mental status examination with Dr. Jack Bentley. (R. 461–63). Dr. Bentley found that Sands' impairment for simple tasks fell within the marked range and that she would have moderate to marked limitations in her ability to sustain complex or repetitive work-related activities. (R. 463). He also determined that Sands' history of memory loss, fatigue, and slowing in psychomotor skills would

7

impact her ability to complete any work-related activities in a timely manner. (*Id.*). The ALJ found Dr. Bentley's opinion not persuasive "because it is not supported by or consistent with the evidence." (R. 51). The ALJ again noted that Sands' mental status exams "revealed normal cognition, adequate attention, and memory [that] was intact." (*Id.*). And the ALJ reiterated that though Sands reported not liking being around people, there was no evidence she couldn't get along with them. (*Id.*). Finally, the ALJ noted that Sands "was consistently oriented with appropriate mood and affect." (*Id.*).

2. ALJ's error: The ALJ's reasoning for why he discounted Dr. Nichols and Dr. Bentley's opinions failed to adequately explain how he considered the supportability factor. The court agrees with the Commissioner that an ALJ needn't use magic words to show that he adequately considered the supportability and consistency factors when evaluating the persuasiveness of a medical opinion. But the ALJ must explain the extent to which the medical source supported his opinions with supporting explanations or his examination findings. *See* 20 C.F.R. §§ 416.920c(b)(2), 416.920c(c)(1); *see also Mayfield v. Comm'r, Soc. Sec. Admin.*, Case No. 7:20-cv-1040-ACA, 2021 WL 5300925, at 5 (N.D. Ala. Nov. 15, 2021).

*a. Dr. Nichols:* In finding Dr. Nichols' opinion only partially persuasive, the ALJ did state that the opinion isn't entirely supported by the evidence and more specifically that the opinion that Sands cannot "concentrate, deal with normal pressure, or interact is not supported by evidence or the record." (R. 50). But the ALJ doesn't explain ***why*** Dr. Nichols' mental status examination findings don't support her opinions. Nor is it clear that the evidence that the ALJ is referring to is the evidence from Dr. Nichols, the evidence that's relevant to the supportability factor.

The Commissioner says that the ALJ's statement that "[m]ental status exams revealed normal cognition, adequate attention, and intact memory" shows that the ALJ adequately considered the supportability factor because Dr. Nichols' evaluation is an evaluation that revealed these findings. (R. 50). But the exhibits that the ALJ cites to support this rationale for discounting Dr. Nichols' opinions are exhibits that include mental status exam findings from providers other than Dr. Nichols. (*Id.* (citing Exhibits C11F, C12F, C13F, C14F, and C17F/5)). So while this statement may satisfy the ALJ's duty to

8

discuss the consistency factor, it doesn't satisfy the ALJ's duty to explain why Dr. Nichols' records don't support her opinions. And the court cannot guess whether the ALJ would say that Dr. Nichols' mental status exam findings also showed normal cognition, adequate attention, and intact memory. *Mills v. Astrue*, 226 F. App'x 926, 931 (11th Cir. 2007) (Re-weighing the evidence "would invade[ ] the province of the ALJ.").

*b. Dr. Bentley:* After summarizing the results of Sands' mental status examination with Dr. Bentley, the ALJ found Dr. Bentley's opinion "not persuasive because it is not supported by or consistent with the evidence." (R. 51). The ALJ then referred to his rationale for discounting Dr. Nichols' opinion to support his rejection of Dr. Bentley's opinion. (*See id.* ("Again, her mental status exams revealed normal cognition, adequate attention, and memory was intact, and although the claimant reported that she did not like being around people, there was no evidence that she could not get along with them. She was consistently oriented with appropriate mood and affect, etc.")).

The ALJ spent 17 sentences summarizing Dr. Bentley's mental status exam findings. (R. 50–51). But the ALJ's rationale for rejecting Dr. Bentley's opinions doesn't discuss Dr. Bentley's particular findings. Nor does the ALJ appear to refer to them in assessing Dr. Bentley's opinions. The ALJ instead seems to have found that the medical records from other providers that contradicted Dr. Nichols' opinions also contradicted Dr. Bentley. As the ALJ didn't explain why Dr. Bentley's own records and statements don't support his opinions, the court finds that the ALJ didn't adequately articulate how he considered the supportability factor when assessing Dr. Bentley's opinions.

\* \* \*

In short, the ALJ's explanations for rejecting Dr. Nichols and Dr. Bentley's opinions were inadequate because the ALJ didn't articulate the extent to which Dr. Nichols and Dr. Bentley supported their opinions. So the court will remand this case to the Commissioner for further consideration of Dr. Nichols and Dr. Bentley's opinions.

### B. Gaps in the Record

Remand will also give the ALJ a chance to address Dr. Mary Arnold's opinion, which was considered on initial review and reconsideration, and to determine whether Dr. Scott Duncan performed a consultative mental status evaluation on Sands.

In arguing that the ALJ failed to adequately develop the record, Sands asserts that the ALJ needed to include opinions from Duncan, Arnold, Fleming, Rutherford, and Robertson in the record. Duncan is a consultative examiner who the SSA hired to perform a mental status examination on Sands. Though Duncan's evaluation is listed as evidence received during initial review of Sands' SSI application and as an exhibit on the ALJ's exhibit list, an evaluation from him isn't in the record or mentioned in the ALJ's hearing decision. The Arnold, Fleming, Rutherford, and Robertson opinions are opinions considered by the ALJ who denied Sands' second application for benefits. As explained, the SSA considered Arnold's opinion upon initial review of Sands' current application for benefits but her opinion (like the opinions of Fleming, Rutherford, and Robertson) wasn't considered as part of the ALJ's hearing decision.

The Commissioner responds to Sands' argument that the ALJ impermissibly overlooked the Duncan opinion by asserting that a cancellation letter sent to Sands shows that her appointment with Duncan was canceled, so he didn't perform a mental status exam. As for the opinions from Arnold, Fleming, Rutherford, and Robertson, the Commissioner argues that the ALJ had no duty to consider them because (a) these opinions predate the relevant period by as much as 10 years, and (b) the ALJ who denied Sands' second application for benefits considered these opinions and still found that Sands wasn't disabled. The Commissioner also points out that an ALJ must develop the record only for the twelve months before an applicant applies for benefits. *See* 20 CFR § 416.912(b)(1).

The court needn't (and doesn't) decide whether an ALJ has a duty to ensure the record includes opinions, such as Fleming, Rutherford, and Robertson's, which were considered as part of an applicant's previous application for benefits and are presumably in the SSA's possession. But the

10

court feels a need to note that the SSA must "consider at each step of the review process any information [the claimant] present[s] as well as the information in our records." 20 CFR § 416.1400. And an ALJ must articulate "how persuasive [he] find[s] all of the medical opinions and prior administrative findings in [the claimant's] case record." 20 CFR § 416.920c(b). The ALJ's failure to refer to Dr. Duncan or Dr. Arnold in the hearing decision raises concerns that these regulatory requirements weren't met here.

*a. Dr. Duncan*: As noted above, the Commissioner contends that Dr. Duncan never examined Sands and didn't perform a mental status evaluation of her. In support of this argument, the Commissioner attaches to his brief a letter purporting to cancel Sands' appointment with Dr. Duncan. But this court's review is limited to considering the evidence in the certified record. *See Cherry v. Heckler*, 760 F.2d 1186, 1193–94 (11th Cir. 1985), *superseded on other grounds by 20 CFR § 404.1520(a)*. And the Commissioner didn't include this cancellation letter in the certified record.

It's unclear from the evidence in the certified record whether Dr. Duncan's consultative exam took place. On one hand, no records from Dr. Duncan are within the materials before the ALJ. On the other hand, at both the initial and reconsideration stages a consultative examination report from Dr. Duncan was listed as evidence of record. (R. 118, 130). And at the hearing stage, "CE Psychology, dated 11/02/2021, from Scott A. Duncan, Psy.D" was listed as Exhibit C8F though other medical records appear where Exhibit C8F should be. (R. 1, 451–59). These discrepancies suggest that there may have been a consultative examination report from Dr. Duncan that was accidentally not included in the medical records provided to the ALJ. To ensure that he considers all the information and medical opinions in Sands' case record, the ALJ should determine on remand if Dr. Duncan evaluated Sands. If Dr. Duncan did perform an evaluation, the ALJ should consider the evaluation and articulate the persuasiveness of any medical opinions Dr. Duncan provided.

*b. Dr. Arnold*: Dr. Arnold performed a mental status examination of Sands in 2010. (R. 120). Dr. Arnold found that Sands had a GAF score of 45 and that Sands' personality factors affected her medical condition. (*Id.*). She also diagnosed Sands with explosive episodes and episodic major depressive disorder, recurrent without psychosis. (*Id.*). Dr. Arnold's opinions were listed

11

as evidence of record at the initial stage and explicitly discussed in the State agency psychological consultant's findings of facts and analysis of evidence. (*Id.*). The Arnold consultative report was also included as evidence of record at the reconsideration stage. (R. 130). But evidence from Dr. Arnold wasn't exhibited at the ALJ hearing stage and wasn't mentioned in the ALJ's hearing decision.

The ALJ needs to consider Dr. Arnold's opinions on remand. The court recognizes that Dr. Arnold's report is remote in time and may not relate to the period that's relevant to Sands' application for SSI. But the ALJ considered Dr. Nichols' opinions even though they were generated before the relevant period. And the SSA's regulations require ALJ's to discuss "***all*** of the medical opinions and prior administrative findings in [the claimant's] case record." 20 CFR § 416.920c(b) (emphasis added). That Dr. Arnold's opinions were seemingly considered at both the initial and reconsideration stages shows that they were opinions within Sands' case record that warranted consideration. Plus, though the ALJ that presided over Sands' second application for benefits found Dr. Arnold's opinions not persuasive, the ALJ that presided over Sands' current application for benefits didn't discuss the previous ALJ's rationale for rejecting Dr. Arnold's opinions. And this court cannot affirm just because some rationale may support the ALJ's conclusion. *See Owens v. Heckler*, 748 F.2d 1511, 1516 (11th Cir. 1984).

In sum, aside from reevaluating Dr. Nichols and Dr. Bentley's opinions, the ALJ needs to (a) clarify the record related to Dr. Duncan, and (b) consider Dr. Arnold's opinions.

## IV. CONCLUSION

For the reasons stated above, the court will **REVERSE** the SSA's denial of benefits and **REMAND** this case to the Commissioner. The court will enter a separate final order that closes this case.

**Done** on February 5, 2024.

_____
**COREY L. MAZE**
UNITED STATES DISTRICT JUDGE